# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CROSS CREEK SEED, INC.,           )
                                  )
           Plaintiff,             )
                                  )
     v.                           )     1:16cv1432
                                  )
GOLD LEAF SEED COMPANY,           )
                                  )
           Defendant.             )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on the "Joint Motion to Seal and Substitute Redacted Filings" (Docket Entry 26) (the "Sealing Motion"). For the reasons that follow, the Court will deny the Sealing Motion.

## BACKGROUND

On December 21, 2016, Cross Creek Seed, Inc. (the "Plaintiff") initiated this action against Gold Leaf Seed Company (the "Defendant," and collectively with Plaintiff, the "Parties") for, inter alia, allegedly breaching a Settlement Agreement and violating Plaintiff's intellectual property rights. (See generally Docket Entry 1 (the "Complaint").) According to the Complaint, the Parties entered into a Settlement Agreement to resolve a 2006 lawsuit (id., ¶ 6) regarding "ownership of a number of plant varieties owned by [Plaintiff]" (id., ¶ 5), which Settlement Agreement Defendant allegedly breached by "offering for sale" in November 2016 (id., ¶ 7) certain goods in "the U.S.

market" (id., ¶ 8).  On January 26, 2017, Defendant moved to dismiss the Complaint (see Docket Entries 11, 12), and, on February 16, 2017, Plaintiff moved to amend the Complaint (see Docket Entries 13, 13-1, 14).  In March 2017, the Parties completed briefing on the dismissal and amendment motions (see Docket Entries 15-17), with Defendant asserting in its response to the amendment motion that, "[b]y revealing the details of the Settlement Agreement in a public filing, Plaintiff has breached the confidentiality provisions therein" (Docket Entry 16 at 3 n.1).[1]

On September 26, 2017, the Court (per United States District Judge Loretta C. Biggs) granted "Plaintiff's Motion for Leave to Amend Complaint" and granted in part and denied in part "Defendant's Motion to Dismiss." (Docket Entry 19 (the "Order") at 5 (citing Docket Entries 11, 13).)  Pursuant to the Order, Plaintiff filed its "Amended Complaint" (Docket Entry 20) on October 5, 2017.  Thereafter, the Parties engaged in settlement negotiations (see, e.g., Docket Entry 24, ¶ 2) and "reached a settlement" by December 20, 2017 (Docket Entry 25, ¶ 2).  More than a month later, the Parties filed the Sealing Motion, which "request[s] that the Court seal documents filed as [Docket Entries] 1, 12, 13-1, 14, 16, 17, and 20 and replace them with redacted

---

[1] Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

copies thereof filed as exhibits to the accompanying memorandum in support" (Docket Entry 26 at 1).

## DISCUSSION

### I. Applicable Standards

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern." Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978). Accordingly, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); see Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case."); see also Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 572 (1980) (opinion of Burger, C.J.) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."). As the United States Court of Appeals for the Fourth Circuit has explained, "[t]he value of openness in judicial proceedings can hardly be overestimated. 'The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes

the ensuing decision look more like fiat, which requires compelling justification.'" United States v. Moussaoui, 65 F. App'x 881, 885 (4th Cir. 2003) (quoting Union Oil Co. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000)).

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dep't of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "The common law presumes a right to inspect and copy judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). This "common law presumption in favor of access attaches to all 'judicial records and documents,'" whereas "the First Amendment guarantee of access has been extended only to particular judicial records and documents." Id. (quoting Nixon, 435 U.S. at 597).

As relevant to these proceedings, the common law presumption of access "is not insurmountable, and access may be denied if certain substantive and procedural preconditions are satisfied." In re Application of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 293 (4th Cir. 2013).[2] "To substantively overcome the common law presumption of access . . ., a court must find that there is a 'significant countervailing

---

2 As discussed below, the Parties fail to overcome the common law right of access, rendering unnecessary any consideration of access rights under the First Amendment.

4

interest' in support of sealing that outweighs the public's interest in openness." Id. "The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." Moussaoui, 65 F. App'x at 889. The factors a court may consider in this balancing test include "whether the records are sought for improper purposes, such as . . . unfairly gaining a business advantage." In re Application, 707 F.3d at 293 (internal quotation marks omitted).

On the procedural front, a court must provide the public "notice of [the] request to seal[] and an opportunity to object to the request before the court ma[kes] its decision." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). "[D]ocketing [the request] reasonably in advance of deciding the issue" satisfies this notice obligation. Id. Finally, if a court grants the sealing request, it must "state the reasons for its decision to seal supported by specific findings[] and the reasons for rejecting alternatives to sealing." Id.

**II. Analysis**

The Sealing Motion has appeared on the Court's public docket since January 23, 2018. (See Docket Entries dated Jan. 23, 2018, to present.) This public docketing satisfies the procedural prerequisites to consideration of the Sealing Motion. See In re Knight, 743 F.2d at 235. The docket contains no objections to the Sealing Motion. (See Docket Entries dated Jan. 23, 2018, to

5

present.)  Nevertheless, as explained below, sealing remains inappropriate.

In support of their Sealing Motion, the Parties first maintain that "[t]he limited information at issue that [they] seek to redact should not be considered a 'judicial record' because it has played no part in the adjudicative process." (Docket Entry 27 at 4.)[3] According to the Parties,

> [t]his case is in its infancy, and the terms of the Parties' confidential agreement that have been referenced in the pleadings have not had an impact on any ruling from this Court. The only substantive adjudication that the Court has made was on a motion to dismiss, and that Order did not rely on or even mention any of the terms of the agreement. [Docket Entry] 19. As a result, the public's right to access this information, if any, is minimal.

(Docket Entry 27 at 4.)

As a preliminary matter, the Parties' settlement of this case before a final adjudication on the merits of Plaintiff's claims does not, by itself, affect either the status of the relevant material as judicial records or the public's right of access thereto. See, e.g., Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 140 (2d Cir. 2016) ("The fact that a suit is ultimately settled without a judgment on the merits does

---

3   It bears noting that courts typically assess whether documents — rather than specific information within those documents — constitute judicial records. See, e.g., In re Application, 707 F.3d at 290 (evaluating status of "judicially authored or created documents" and "documents filed with the court").

6

not impair the 'judicial record' status of pleadings. . . . Thus, pleadings are considered judicial records 'even when the case is pending before judgment or resolved by settlement.'"). Instead, "documents filed with the court" qualify as "'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." In re Application, 707 F.3d at 290. Complaints "plainly" qualify as judicial records. Bernstein, 814 F.3d at 140; see also Federal Trade Comm'n v. Abbvie Prods. LLC, 713 F.3d 54, 62-63 (11th Cir. 2013) ("[C]ourts have consistently treated complaints as judicial records for purposes of determining whether the common-law right of access applies.") (collecting cases). Furthermore, "it is commonsensical that judicially authored or created documents are judicial records." In re Application, 707 F.3d at 290.

Here, the Parties seek (i) to seal the Complaint, proposed amended complaint, and Amended Complaint, as well as certain dismissal and amendment motion-related filings and (ii) to replace those documents with redacted versions. (See Docket Entry 26 at 1.) With one exception, the material that the Parties seek to redact appears in at least one of the complaints. (Compare Docket Entries 1, 20, with Docket Entries 12, 13-1, 14, 16, 17, and Docket Entries 27-2 to 27-6.) The complaints qualify as judicial records, see Bernstein, 814 F.3d at 140, and, thus, at a minimum, a common law right of access applies to them, see Stone, 855 F.2d at 180.

7

In addition, certain of the material that the Parties seek to redact appears in the Order (see Docket Entry 19 at 1, 4), which likewise qualifies as a judicial record subject to at least a common law right of access, see In re Application, 707 F.3d at 290.

The only material at issue not derived directly from the Complaint or Amended Complaint appears in Plaintiff's reply in support of the motion to amend. (Docket Entry 17 (the "MTA Reply") at 4 n.1.) Because the MTA Reply "w[as] filed with the objective of obtaining judicial action" on the motion to amend, In re Application, 707 F.3d at 291, and, indeed, was explicitly considered by the Court in ruling on that motion (see Docket Entry 19 at 4), the MTA Reply qualifies as a judicial record. See In re Application, 707 F.3d at 290 (holding that "documents filed with the court" qualify as "'judicial records' if they play a role in the adjudicative process"). Thus, at least a common law presumption of access applies to the MTA Reply.

The Parties next maintain that sealing remains proper "under the common law balancing test." (Docket Entry 27 at 5 (emphasis and capitalization omitted).) In particular, the Parties generically assert that their interest in maintaining the confidentiality of the Settlement Agreement's terms to prevent unfair competition outweighs the public's right of access. (See id. at 1-3, 5-6.) In appropriate circumstances, the protection of confidential business information to prevent unfair competition can

constitute a sufficient countervailing interest to overcome the common law presumption of access. See In re Application, 707 F.3d at 293.

Here, however, the Complaint has appeared on the public docket since December 21, 2016. (See Docket Entry 1.) Aside from the October 2017 Amended Complaint (see Docket Entry 20), the remaining documents that the Parties seek to seal have appeared on the public docket since January 2017 (Docket Entry 12), February 2017 (Docket Entries 13-1, 14), and March 2017 (Docket Entries 16, 17). One such document, filed March 9, 2017, explicitly acknowledges that the Complaint "reveal[s] the details of the Settlement Agreement in a public filing." (Docket Entry 16 at 3 n.1.) Yet, the Parties have explained neither why they filed these documents in the public record in the first place, nor why they waited more than a year after filing the first such document — and more than ten months after explicitly recognizing its public disclosure of the "details of the Settlement Agreement" (id.) — to file their Sealing Motion. (See Docket Entries 26, 27.)

Moreover, much of the information that the Parties seek to redact appears elsewhere in these or other documents on the public docket. (Compare, e.g., Docket Entry 1, ¶ 6, and Docket Entry 27-1, ¶ 6, with Docket Entry 19 at 1, 4.) For instance, the Parties propose redacting the paragraphs detailing the Second Cause of Action in the Complaint, proposed amended complaint, and Amended

9

Complaint to remove references to the nature of their arrangement. (Compare Docket Entry 1, ¶¶ 15, 16, Docket Entry 13-1, ¶¶ 23, 24, and Docket Entry 20, ¶¶ 23, 24, with Docket Entry 27-1, ¶¶ 15, 16, Docket Entry 27-3, ¶¶ 23, 24, and Docket Entry 27-7, ¶¶ 23, 24.) However, they fail to request redaction of either the Second Cause of Action's descriptive caption or the Order's reference to this claim, both of which reveal this ostensibly confidential information (see Docket Entry 1 at 5; Docket Entry 13-1 at 8; Docket Entry 19 at 1; Docket Entry 20 at 7). (See Docket Entry 26 at 1; Docket Entry 27 at 1, 6.)

By way of further example, the Parties also seek redaction of the descriptions of Exhibits A and B in the Complaint, proposed amended complaint, and Amended Complaint, but fail to request redaction of Exhibits A and B themselves, whose highlighted notations reveal the allegedly confidential information. (Compare Docket Entry 1, ¶¶ 7, 9, Docket Entries 1-1, 1-2, Docket Entry 13-1, ¶¶ 7, 14, Docket Entry 20, ¶¶ 7, 14, and Docket Entries 20-1, 20-2, with Docket Entry 27-1, ¶¶ 7-9, id. at 11-16, Docket Entry 27-3, ¶¶ 7, 14, and Docket Entry 27-7, ¶¶ 7, 14.) The Parties provide neither an explanation of this inconsistent treatment nor a justification for such selective redaction. (See Docket Entries 26, 27.)

Under these circumstances, the Parties have not shown that their confidentiality interests "outweigh[] the public's interest

10

in openness," In re Application, 707 F.3d at 293.  See Moussaoui, 65 F. App'x at 889 (observing that the party seeking sealing bears "[t]he burden of establishing that a particular document should be sealed").  Accordingly, the Court will deny the Sealing Motion. See, e.g., Morris Hatchery, Inc. v. Interlink Grp. Corp. USA, Inc., No. 10-24480-CIV, 2012 WL 13012495, at *2-3 (S.D. Fla. Apr. 16, 2012) (denying request to seal depositions and filings "quoting those depositions," which allegedly revealed trade secrets, where the requesting party failed to explain, inter alia, "why the entire depositions were filed in the public record" or "why nearly two months passed before [the party] asked the [c]ourt to go back and seal those public filings").

## CONCLUSION

The Parties fail to justify sealing the specified material.

**IT IS THEREFORE ORDERED** that the Sealing Motion (Docket Entry 26) is **DENIED**.

This 26th day of February, 2018.

/s/ L. Patrick Auld  
**L. Patrick Auld**  
**United States Magistrate Judge**